

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00526-CV

**IN THE INTEREST OF L.J.G.**, et al., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA00461
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Karen Angelini, Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed:  January 10, 2018

REVERSED AND REMANDED

Christy G. appeals the trial court's order terminating her parental rights to five of her children, L.J.G., G.J.G., Z.I.G., A.A.G., and L.G.-R.F.[1]  Christy G. contends the trial court erred in granting the motion to strike her request for a jury trial as a sanction for her failure to attend court-ordered mediation.  Christy G. also contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the children's best interest.  We sustain Christy's first issue and reverse the portion of the trial court's order terminating Christy's parental rights.  We remand the cause to the trial court for further proceedings.

---

[1] The order also terminated the parental rights of the children's fathers; however, they have not appealed.

**BACKGROUND**

On March 3, 2016, the Texas Department of Family and Protective Services filed a petition seeking to terminate Christy G.'s parental rights. On that same day, Rosie Reyes was appointed as Christy G.'s attorney ad litem. On March 16, 2016, however, the trial court granted Reyes's motion to withdraw and appointed Byron Barnett to represent Christy G. Christy G. personally appeared at the hearing on temporary orders on March 29-30, 2016, and at the status hearing on April 27, 2016.

Christy G. also personally appeared at the permanency hearing before final order on August 24, 2016. The following day, Christy G. filed a timely request for a jury trial.

On December 5, 2016, the trial court signed an order referring the case to mediation on May 15, 2017. The order stated, "A violation of this Order shall be punished by contempt of Court, which is punishable by confinement in the County Jail for up to six (6) months and a fine of up to $500."

On December 30, 2016, the trial court sent a notice that the cause was set for a jury trial on June 19, 2017. Christy G. personally appeared at a permanency hearing before final order on March 22, 2017.

On April 17, 2017, the children's attorney and guardian ad litem filed a motion to modify temporary orders based on Christy G.'s failure to appear for a hair follicle test and concerns that continued contact between Christy G. and the children would be detrimental to the children's mental and emotional health. Specifically, the motion referred to Christy's G.'s erratic behavior and the emotional trauma the oldest child was experiencing after family therapy. The motion requested that Christy G.'s visits with the children and family therapy be terminated.

Christy G. did not personally appear at the hearing on the motion to modify which was held on April 24, 2016; however, she appeared through her attorney of record. The trial court

granted the motion to modify, terminating the family therapy and Christy G.'s visits with the children.

On May 5, 2017, Christy G.'s attorney ad litem filed a motion to withdraw stating he was "unable to effectively communicate with Christy [G.] in a manner consistent with good attorney-client relations." On May 10, 2017, the trial court signed an order granting the motion to withdraw. On May 11, 2017, the trial court signed an order appointing Monica Guerrero as Christy G.'s attorney ad litem. The mediation was held on May 15, 2017.

On June 9, 2017, the Department filed a motion for continuance of the June 19, 2017 trial date. On June 15, 2017, the trial court signed a pre-trial scheduling order resetting the trial to July 10, 2017. The order also stated that "mediation is ordered prior to July 6, 2017."

On July 7, 2017, the Department filed a motion to strike the jury demand/setting as a sanction for Christy G.'s failure to attend the May 15 court-ordered mediation. On July 10, 2017, Christy G.'s attorney ad litem filed a motion for continuance stating she was recently appointed and did not have sufficient time to prepare. The motion also stated Christy G. did not appear at the mediation because of medical problems requiring hospitalization.

On July 10, 2017, the case proceeded to trial. After some discussion off the record, the trial court went on the record noting Christy G.'s attorney had filed a motion for continuance and asked the other attorneys to identify themselves for the record. The trial court then recapped the off-the-record discussion stating the trial court heard Christy G.'s motion for continuance off the record, noting a conversation between Christy G. and her attorney in which Christy G. stated she missed the mediation because she was in the hospital. The trial court also noted that Guerrero was appointed as Christy G.'s attorney ad litem on May 11, 2017, and the mediation was scheduled for May 15, 2017. The following exchange then occurred regarding Christy G.'s failure to appear at the mediation:

THE COURT: …. And let the record reflect that after the Court inquired, it turns out mom was hospitalized, but it was at Easter, not during the mediation timeframe.

Would that be correct ma'am?

[CHRISTY G.]: I was not told about the mediation.

THE COURT: Ma'am, when were you hospitalized? Was it around the Easter —

[CHRISTY G.]: I was hospitalized twice so —

THE COURT: Were you hospitalized during the Easter timeframe?

[CHRISTY G.]: I was hospitalized then and then also sometime in May, as well. I don't know exactly the dates, but I can get that for you.

The trial court then swore Christy G. in as a witness and asked if she only mentioned being hospitalized around Easter as the reason she did not attend the mediation. Christy G. responded she was hospitalized in both April and May, and she did not know she was being asked about May during the prior questioning. When asked about the dates she was hospitalized in May, Christy G. said she was unsure but could provide the dates. Christy G. also stated she was on her way to the hospital because she was having contractions and informed the trial court her due date was July 4, 2017. The trial court then requested that the record reflect that Christy G. walked out of the courtroom after her attorney was told the continuance was going to be denied, and the trial court told the deputy to ask Christy G. to return to the courtroom.

The trial court then asked the Department about the motion to strike the jury demand. The Department's attorney stated the local rules allowed the trial court to order sanctions when parties miss mediation, and asked the trial court to strike Christy G.'s jury demand as a sanction because she failed to attend the mediation. The Department's attorney further stated the caseworker would testify that Christy G. told the caseworker she missed the mediation because she was not informed about the date and did not mention being hospitalized.

The trial court then swore the caseworker in as a witness. The caseworker testified she knew Christy G. was previously aware of the mediation date. The caseworker further testified Christy G. told her she was getting a new attorney in March who would be ready for the mediation.

The caseworker stated, "She called it the court date and — what was it — April — May 15th. And I talked to her after that mediation. And she said nobody had made her aware of that date." The trial court then asked Christy G. if the caseworker's testimony was correct. Christy G. responded neither the caseworker nor her attorney returned her phone calls, and she was "completely unaware of the date." Christy G. further responded that she attended all other court hearings and had completed her service plan.

In response to whether any of the attorneys had objections to the motion to strike, Christy G.'s attorney objected, asserting Christy G. was either hospitalized on the date of the mediation or unaware of the mediation date based on lack of communication with the former attorney which led to her appointment as Christy G.'s attorney ad litem. The trial court then asked Christy G. how she was first made aware of the May 15th date, and Christy G. responded that the caseworker called her and told her she missed the mediation. Christy G. stated she was very upset that she was not informed. Christy G. stated the caseworker hung up on her and had not returned any phone calls in the past two months.

The attorney ad litem for one of the fathers then stated the May mediation date was announced at the March 22nd hearing, and since Christy G. stated she was present at all the prior hearings, she would have been informed of the date. In response to the trial court's question about whether Christy G. remembered the announcement at the March 22nd hearing, Christy G. responded she did not. The trial court then granted the motion to strike.

The trial court stated the trial would proceed and asked Christy G. if she wanted to testify as the first witness. Christy G. responded that she had to go to the hospital because she was having contractions. The trial court informed Christy G. that she needed to fax documentation showing that she was hospitalized and temporarily recessed the trial. After additional delays and efforts were made to determine if Christy G. was actually hospitalized, trial resumed the following day.

At the conclusion of two days of testimony, the trial court terminated Christy G.'s parental rights. Christy G. appeals.

### STRIKING OF JURY DEMAND

As previously noted, the trial court struck Christy G.'s jury demand as a sanction for her failure to attend the court-ordered mediation.

A.      Standard of Review

A trial court's imposition of sanctions is reviewed for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). A trial court abuses its discretion when it acts without reference to guiding rules and principles. *Id*. at 838-39. We determine whether the trial court abused its discretion based on our review of the entire record. *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006).

In determining whether a trial court abused its discretion in imposing sanctions, we must ensure that the sanctions were appropriate or just. *Id*. at 583 (citing *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 916 (Tex. 1991)). We conduct the following two-part inquiry in making this determination. *Id*. First, we must ensure that there is a direct relationship between the improper conduct and the sanction imposed. *Id*. Second, "just sanctions must not be excessive." *TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 917. "The punishment should fit the crime." *Id*. A sanction "should be no more severe than necessary to satisfy its legitimate purposes." *Id*. "It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Id*.

B.      Strict Scrutiny of Constitutional Rights

"Because the natural right between a parent and [her] child is one of constitutional dimensions, termination proceedings must be strictly scrutinized." *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014) (internal citation omitted). The Texas Constitution guarantees the right to trial by

jury, and section 105.002 of the Texas Family Code provides for the right to a jury trial in a termination proceeding. *See* TEX. CONST. art. I, § 15; TEX. FAM. CODE ANN. § 105.002 (West Supp. 2017). Accordingly, if a jury trial is timely requested in a termination proceeding, a motion striking that request as a sanction must be strictly scrutinized. *See In re K.M.L.*, 443 S.W.3d at 112.

C.      *Young v. Young*

In *Young v. Young*, No. 03-14-00720-CV, 2016 WL 7339117, at *1 (Tex. App.—Austin Dec. 15, 2016, no pet.), the Austin court addressed the trial court striking a jury demand as a sanction in the context of a child custody case. In that case, the mother sought sanctions for the father's failure to properly reply to discovery requests and failure to schedule a child-custody psychological evaluation. *Id.*

On August 5, 2013, the trial court held a hearing on the mother's motion and verbally ordered the father to serve the mother with adequate discovery responses and to comply with the evaluation order. *Id.* at *2. The trial court also verbally sanctioned the father by: (1) prohibiting him from calling witnesses or introducing documents at trial; and (2) ordering that he pay attorney's fees. *Id.* at *2. However, the trial court also stated that if the father filed a motion for reconsideration and demonstrated compliance with the discovery and evaluation requirements, the court would consider lifting the evidence-exclusion sanction. *Id.*

On November 13, 2013, the trial court held an additional hearing to memorialize its August 5 verbal rulings. *Id.* Because the father still had not made any efforts to complete the evaluation, the trial court entered written orders prohibiting the father from calling witnesses or introducing documents at trial and ordering him to schedule his evaluation by November 14, 2013, and complete the evaluation by January 15, 2014. *Id.*

On May 28, 2014, the mother filed another motion to compel compliance with the evaluation order and for sanctions. *Id*. At the hearing, the trial court ordered the father to fully comply with the evaluation within 45 days or he would strike his pleadings and jury demand and proceed to a bench trial on the mother's pleadings and evidence only. *Id*. When the father still failed to comply with the evaluation order, the trial court entered a written order striking his pleadings and jury demand and prohibiting him from calling witnesses and introducing documents at trial. *Id*.

On September 3, 2014, the trial court held a final hearing and denied the father's objection to the denial of a jury trial. *Id*. After a full hearing on the merits, the trial court named the mother as sole managing conservator and the father as possessory conservator with standard possession. *Id*.

In addressing the trial court's order striking the father's jury demand, the Austin court concluded that no nexus existed between the father's misconduct and the trial court's order striking his jury demand. *Id*. at *8. Although the Austin court noted the sanction was properly imposed on the father as the offender, the record established no connection between denying the father his constitutional right to a jury trial and curing the prejudice that his misconduct caused. *Id*. The Austin court further noted that "a showing of a direct nexus between misconduct and striking a jury demand assumes particular importance in cases involving determination of parental rights, in which the legislature has mandated that jury decisions regarding certain custody-related issues are binding upon the trial court." *Id*. at *9. The Austin court then concluded, "Absent a showing that denying [the father] a jury trial would address the harm resulting from his discovery abuse, he was entitled to have a jury resolve those [custody-related] issues." *Id*. Based on the foregoing analysis, the Austin court held the trial court abused its discretion in striking the father's jury demand. *Id*.

The Austin court then addressed the mother's argument that the sanction, if erroneous, was harmless. As support for this argument, the mother cited *Halsell v. Dehoyos*, 810 S.W.2d 371 (Tex. 1991). The Austin court concluded the *Halsell* harm analysis was inapplicable because the *Halsell* case "concerned the timeliness of a jury demand and not whether a jury demand may be struck as a discovery sanction." *Id.* Even assuming the *Halsell* harm analysis did apply, the Austin court noted an erroneous order striking a jury demand would only be harmless if the record showed no material fact issues exist. *Id.* The Austin court further noted "[s]uits affecting the parent-child relationship are 'intensely fact driven' and involve a best-interest analysis that requires balancing of many factors." *Id.* (quoting *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002)). Accordingly, because the record reflected numerous material fact issues existed, the Austin court concluded the denial of the jury trial was harmful error. *Id.*

D.      Analysis

Similar to the analysis in *Young*, although the trial court in this case also properly imposed the sanction on Christy G. as the offender, the record establishes no connection between denying Christy G. her constitutional right to a jury trial and curing the prejudice that her failure to appear at the mediation caused. Furthermore, the record does not reflect the trial court considered the lesser sanction of contempt which the order referring the case to mediation expressly stated to be a possible sanction. Because termination proceedings must be "strictly scrutinized" and the record does not show that denying Christy G. a jury trial would address the harm resulting from her failure to appear at mediation, we hold the trial court abused its discretion in striking Christy G.'s jury demand. *See In re K.M.L.*, 443 S.W.3d at 112; *Young*, 2016 WL 7339117, at *8-9. Furthermore, assuming the *Halsell* harm analysis applies, in order to terminate Christy G.'s parental rights, the Department had the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the children.

*See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2016); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, because numerous material fact issues exist in a parental termination case, the erroneous denial of a jury trial in this case was harmful error. *See Young*, 2016 WL 7339117, at *9; *In re A.S.*, 241 S.W.3d 661, 666 (Tex. App.—Texarkana 2007, no pet.).

## BEST INTEREST

In her second issue, Christy G. contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the children's best interest. Although we have held the trial court abused its discretion in striking Christy G.'s jury demand, we still must address whether the evidence is legally insufficient to support the trial court's best interest finding because it is a rendition issue. *E-Z Mart Stores, Inc. v. Ronald Holland's A-Plus Transmission & Auto., Inc.*, 358 S.W.3d 665, 670 (Tex. App.—San Antonio 2011, pet. denied) (noting legal sufficiency is a rendition issue).

The Texas Supreme Court has enumerated the following factors to assist courts in evaluating a child's best interest: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "A trier of fact may measure a parent's future conduct by

his past conduct and determine whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, the court must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

Because we are limiting our review to the legal sufficiency of the evidence, the following analysis looks at the evidence in the light most favorable to the trial court's finding and disregards all evidence the trial court could have disbelieved or found to have been incredible. *See id.* The Department received five referrals regarding the children from January 5, 2016 to February 20, 2016. The referrals were for: (1) physical abuse of the youngest child who tested positive for THC from marijuana at birth; (2) Christy G. leaving the children in the care of the oldest child, who was eleven years old, to go drinking which prevented the oldest child from going to school; (3) drug usage by Christy G. and the father of the four oldest children; (4) sexual abuse of the oldest child by the father of the youngest child; and (5) medical neglect of three of the children by Christy G.

When the first referral was investigated, Christy G. admitted smoking marijuana while pregnant with the youngest child. *See In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting parent's drug use supports a finding that termination is in best interest of the child). The Department's investigator testified Christy G. was not cooperative with the investigation, and the father of the youngest child told the investigator that Christy G. was

using drugs. Two of Christy G.'s sisters also testified regarding her drug use, and the children's therapist testified the oldest child reported her mother used drugs in front of her.

The caseworker testified Christy G. failed to complete her service plan. *In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) (noting failure to comply with family service plan supports a finding that termination is in the best interest of the child). The caseworker further testified Christy G. provided no documentation to show she is employed or able to provide for the children's basic necessities, and Christy G. had not paid any of the court-ordered child support. *See id.* (noting parent's inability to provide a stable home supports a finding that termination is in the best interest of the child). Both of Christy G.'s sisters testified Christy G. continued to engage in erratic behavior which resulted in her being hospitalized for several days at Easter. Neither of Christy G.'s sisters would leave their children in her care.

The children's therapist testified that two of the children reported their mother was abusive. *See In re L.P.*, No. 07-17-00155-CV, 2017 WL 4173641, at *5 (Tex. App.—Amarillo Sept. 20, 2017, pet. denied) (noting emotional abuse of children indicated the mother's parental abilities were unacceptable and supported best interest finding). The caseworker and the children's therapist also testified the two oldest children became emotionally distraught during visits with Christy G. As a result, the trial court terminated Christy G.'s visits with the children. Since the visits were terminated, each of the children's behavior has improved, and they are happier. The caseworker and two of Christy G.'s sisters also testified the children were thriving since being placed in the care of their paternal grandmother.[2] *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (relying on evidence of children's improvement in foster

---

[2] Although the youngest child had a different father, the youngest child was also placed in the care of the paternal grandmother of the other four children.

care to support best interest finding). The paternal grandmother is willing to adopt all of the children and provide them with a permanent home.

The foregoing is legally sufficient evidence to support the trial court's finding that termination of Christy G.'s parental rights was in the children's best interest.

## CONCLUSION

The portion of the trial court's order terminating Christy's parental rights is reversed, and the cause is remanded to the trial court for further proceedings. We affirm the order in all other respects, including the portion of the order appointing the Department as the managing conservator of the children. *See In re J.A.J.*, 243 S.W.3d 611, 616–17 (Tex. 2007) (explaining that reversal of a parental termination order in a judgment does not affect a conservatorship order in the same judgment absent a challenge to the conservatorship order).

Irene Rios, Justice